## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | SA-17-CR-884-XR |
| | § | |
| GASPAR RODRIGUEZ-GARCIA, | § | |
| | § | |

## ORDER

On this day came on to be considered Defendant's Motion to Suppress (Dkt. No. 23). The motion is DENIED.

## BACKGROUND

The Defendant is charged with violating 8 U.S.C. § 1326 (illegal re-entry). The Defendant argues that because of a warrantless stop his name was eventually placed into a database that the Texas Department of Public Safety (DPS) gave to the U.S. Immigration and Customs Enforcement (ICE).

On August 23, 2017, DPS Trooper Randy Vick is travelling on SH 46 in New Braunfels near the intersection of Vintage Way. The incident is captured on the dash cam of the DPS vehicle.

As the video begins, the officer is driving on SH 46. There is initially no audio to accompany the video. At the 1:49 mark of the video, a black truck appears in front of the officer's vehicle on a side road. The truck turns left in front of the officer to begin driving in the same direction as the officer, a few car-lengths ahead. From the video, it appears that the black truck may have completely stopped a few feet behind the stop sign before making the left turn, but it is difficult to determine because of a left-turning truck in between the officer's vehicle and the black truck.

1

The black truck completes the turn at the 1:57 mark, and it appears the officer accelerates toward the black truck. The audio is turned on at the 2:01 mark. The officer presumably turns on his signal lights because the driver of the black truck turns on his hazard lights, slows down, and pulls over to the shoulder of the road at the 2:27 mark. The black truck comes to a complete stop at the 2:36 mark.

The officer stops his vehicle behind the black truck, exits the vehicle, walks toward the black truck, and arrives at the window at the 2:53 mark. The following is the conversation between the officer and the driver:

> Officer: Good afternoon, Texas Highway Patrol. Reason you're stopped—you didn't stop at that stop sign.
> Driver: Yeah—
> Officer: No. You didn't. You tapped the breaks. Tapping the breaks and stopping is two different things. Alright, let me see your driver's license. You'll receive a ticket for—
> Driver: [unintelligible]
> Officer: Step out of the vehicle. Get out the vehicle.

The driver begins to exit the truck at the 3:14 mark. The conversation continues:

> Officer: Step to the rear of your vehicle. You got any I.D.?

The driver opens his door, retrieves his wallet, and goes to the rear of the truck. The driver hands the officer what is presumably his I.D. The conversation continues:

> Officer: Is that where you live, West Commerce Street?
> Driver: Yep.
> Officer: What is this?
> Driver: [unintelligible]
> Officer: You're going to receive a ticket for disregarding a stop sign. You didn't stop. But, you have no driver's license. If I take you to jail, they're going to call "immigra." And guess what that's gonna happen? They're gonna send you to Mexico.
> Driver: Yeah
> Officer: So
> Driver: Sorry
> Officer: No, don't sorry. You're going back to Mexico.
> Driver: [unintelligible]

2

> Officer: Huh? Excuse me?
> Driver: [unclear, appears to be in Spanish]
> Officer: No, I don't speak Spanish. We're in Texas. This is the United States of America. We speak English here in America. I don't have to speak Spanish to you. No, I don't. And I know you speak English.
> Driver: [shakes head]
> Officer: No, yes you do. You want to play stupid?
> Driver: [Spanish muttering]
> Officer: You want to play stupid?
> Driver: . . . pequito
> Officer: Pequito? Okay, I tell you what. You can speak all the Spanish you want to to "immigra." Put your hands up here.

At the 4:42 mark, the officer gestures for the driver to put his hands on the tailgate of the truck. The driver complies at the 4:43 mark. Still at the 4:43 mark, the officer grabs the driver's left arm with his left hand, then the officer pushes the driver with his right hand against the driver's back toward the back of the truck. The officer pins the driver's hands behind his back at the 4:46 mark.

> Officer: Put your hands up here I said.
> Driver: [unintelligible]
> Officer: Huh?
> Driver: [Spanish] . . . muy bien.
> Officer: You understand English. Now you're playing games with me.
> Driver: No.
> Officer: You're playing games with me. You know that? Are you playing games? Yes. Sí.
> Driver: No. No play.
> Officer: Put your hands right here.

At the 5:18 mark, the officer releases the driver's hands and directs him to place his hands on the top of the truck's tailgate.

> Officer: Do you live here?
> Driver: [nodding]
> Officer: [after writing] Two tickets. No driver's license. Disregarding stop sign. You don't pay the tickets, they will come get you.
> Driver: Pay the tickets.
> Officer: Or I take you to jail. Which one do you want to do?
> Driver: I pay.

3

At the 6:11 mark, the officer tells the driver to stand in between the truck and officer's vehicle, and the officer returns to his vehicle. The driver stands in that spot until the officer returns from the vehicle at the 14:48 mark. The officer walks back to where the driver stands.

> Officer: Señor. You're receiving two tickets. No stop at the stop sign and no driver's license. No licensia. If you contact Judge Tom Clark's office, Judge Tom Clark.
> Driver: [points to paper]
> Officer: That's his telephone number. Here in New Braunfels. On or before September 8. Alright. I need your signature here, it's not an admission of guilt, but a promise to contact the court to clear the ticket.
> Driver: [signs paper]
> Officer: This is the judge's office, okay? Read the letter, if you have any questions, call this office. Okay? Pay the tickets, or "immigra" will come get you. Be careful sir.[1]

At the 15:53 mark, the officer walks away from the driver, having handed over the tickets. In a section captioned Arresting Officer's Comments, Trooper Vick wrote "Mexico Consultant [sic] Card #[XXXXXXXX]". The driver returns to his truck and the officer returns to his vehicle. The video ends before either vehicle drives away.

In preparation for the filing of this motion, the Public Defender's Office obtained a copy of the tickets Rodriguez-Garcia paid on September 8.[2] Clerks in the Justice of the Peace Court explained that after processing the tickets, they sent them on October 2 to Austin DPS. This Court was provided no details by either party as to whether all or just some JP Courts in Texas send traffic citation information to DPS.

DPS thereafter provides a "citations list" to ICE. ICE Officer Omar Esquivel testified that he receives a list of 20-100 names on a random basis. He was unable to provide any details as to how DPS compiles this list, whether DPS includes and transmits to ICE a listing of all persons who have received a traffic citation, or whether DPS only compiles and transmits a list

---

[1] This transcription from the audio does not accurately portray the unprofessional conduct displayed by Trooper Vick. His tone of voice, body language and use of unnecessary force deserves rebuke.
[2] The Defendant pled "nolo contendere" to the traffic charges.

of Hispanic surnames. Further, ICE Officer Esquivel was unable to state whether ICE was requesting this information from DPS or whether DPS was voluntarily sending this information to ICE. ICE Officer Esquivel testified he only receives a list of names of individuals residing in the Bexar County, Texas area. ICE Officer Esquivel testified that the transmission of a "citation list" is a recent happening. It is unknown whether any such list is compiled by DPS for any other areas of the State. No person from DPS testified during the suppression hearing.

Upon receiving an Excel spreadsheet containing the "citation list" from DPS, someone from ICE forwarded the spreadsheet to ICE Officer Esquivel. ICE Officer Esquivel determined that Rodriguez-Garcia was a match for someone who ICE suspected was in the country without authorization. ICE Officer Esquivel obtained the "A" file[3] for Rodriguez-Garcia and started a Field Operations Worksheet. After receiving supervisor approval on October 20, ICE Officer Esquivel did surveillance on the address for Rodriguez-Garcia and verified that the Defendant's vehicle was at the apartment. On November 2, ICE Officer Esquivel and five other armed officers[4] arrived at the apartment, identified the Defendant from a photo on file, arrested the Defendant, and read him his *Miranda* warnings.

Upon booking, ICE Officer Esquivel prepared a I-213 form. Defendant's fingerprints were taken, and he was asked his name, date of birth, and whether he wanted the Mexican consul's office notified. Upon entering the Defendant's name and date of birth, data from the

---

[3] "The government creates an A-file for every non-citizen who comes into contact with a U.S. immigration agency. A-files contain documents relating to any and all interactions which the non-citizen has had with the Department of Homeland Security (DHS) and its subcomponents, U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), and U.S. Customs and Border Protection (CBP), as well as with the former Immigration and Naturalization Service (INS)." § 2:12.Practitioners' notes, Immigration Pleading and Practice Manual § 2:12.

[4] At the time of the arrest ICE was aware that that the Defendant had only one previous conviction for driving while intoxicated.

Defendant's August 2008 I-213 automatically populated the remainder of the form. Thereafter, the indictment was filed in this case.

## ANALYSIS

Rodriguez-Garcia denies that he failed to completely stop but acknowledges that the video does not fully resolve the issue. He argues that because of the traffic tickets he was issued without cause, the subsequent transmittal of the citations list was "fruit of the poisonous tree," and that ICE solely relied upon the information from the citations list to effectuate his arrest.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred…." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Trooper Vick stated in the video that the driver of the vehicle failed to make a complete stop at the stop sign. Until the Trooper approached the driver of the truck, there is no evidence that the Trooper was aware of the national origin of the driver. The stop of the truck was not unreasonable, and no Fourth Amendment violation occurred, although as stated previously, Trooper Vick's conduct was unprofessional.

In addition, the Government argues that the Defendant had no reasonable expectation of privacy in providing his name and address to Trooper Vick as part of the traffic citation process. The Court agrees. See *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) ("Because state law requires a driver operating a motor vehicle to surrender his driver's license and proof of insurance when asked by a police officer, that person does not have a reasonable expectation of privacy regarding those items after being pulled over for a traffic violation.").

Further, both parties agree that in the Fifth Circuit there is no standing for a Defendant to challenge the information contained in the A-file. See *United States v. Cervantes-Malagon*, 457

F. App'x 364, 365 (5th Cir. 2012) ("Furthermore, even if there was a Fourth Amendment violation, this court has held that evidence of identity, such as one's fingerprints and A-file, is not suppressible.").

Finally, to the extent that the Defendant asserts that the ICE officer asked impermissible questions during the booking process, the evidence establishes that the ICE Officer only requested the Defendant's name and date of birth and did not ask any questions to the Defendant that were likely to induce him to incriminate himself. No Fifth Amendment violation occurred. See *United States v. Romo-De La Rosa*, 463 F. App'x 239, 240 (5th Cir. 2012).

## CONCLUSION

Defendant's Motion to Suppress (Dkt. No. 23) is DENIED.

SIGNED this 23rd day of April, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE